JAMES M. CLARKE, Receiver of the Rhode Island Central Bank,
*v.* CHRISTOPHER HAWKINS.

To an action of a receiver of an insolvent bank against the maker, to recover the amount of a note due to the bank, it is no defence, by way of partial accord and satisfaction, that the defendant had an agreement of the bank, made whilst it was doing business, to take his stock in it at an agreed price for cash, or to allow him credit for it on any debt due from him to the bank,—the time of the transfer of the stock to be at his option,— and that he had tendered the stock to the receiver, before action brought, at the agreed rate, in part payment of the note, and the receiver had refused the tender.

Debtors of an insolvent bank in the hands of a receiver, will be allowed to set off debts due to them by the bank whilst it is doing business, against the debts due from them to the bank; but not even the bills of the bank, purchased by them after an injunction has issued against it preliminary to its winding up; and especially, if the debtor be a director of the bank, and has purchased in the bills, at a discount; the allowance of a set-off of bills, so purchased, being in derogation of the rule of equality in payment, established by statute as between the bill-holders of an insolvent bank.

ASSUMPSIT on a promissory note, dated July 21, 1856, for $1,000, made by the defendant, payable to John C. Harris

or order four months after date, and by Harris indorsed in blank, and discounted by the Rhode Island Central Bank. The action was brought by the plaintiff, as receiver of said bank, by appointment under statute proceedings, had in this court to wind up the bank, on the ground, that it was so managing its affairs, that the public, and those having funds in its custody, were in danger of being defrauded by it.

Plea, the general issue; with liberty to give any special matter of defence in evidence under it.

Upon the trial of the case before the court, to whom it was by agreement submitted in law and fact, it appeared in evidence, that the defendant was a stockholder and director of the Rhode Island Central Bank, and acted as a director during the whole time of the currency of the note sued, of which he was the maker, and until the bank was temporarily enjoined, on the 3d day of October, 1857, upon the complaint of the bank commissioners; that the injunction was followed, in due course of proceeding, by the appointment of the plaintiff as receiver of the bank, under a decree of this court ordering the bank to be wound up; and that whilst such director, and indebted to the bank on the above note, and about eleven days prior to the injunction, to wit, on the 22d day of September, 1857, the president of the bank being authorized to buy in such stock of the bank as he might deem for its benefit, the defendant received from the cashier of the bank, under the direction of the president, the following memorandum of an agreement:—

" The Rhode Island Central Bank hereby agrees to purchase of Christopher Hawkins, thirty-eight and one half shares of the capital stock of the Rhode Island Central Bank, allowing him therefor at the rate of eleven dollars and twenty-five cents per share, to be paid in cash or credited upon any indebtedness of said Hawkins to said bank, whenever transferred on the books to the bank. Time of transfer at the option of said Hawkins.

" Wm. Bodfish, Cashier."

" *East Greenwich*, Sept. 22, 1857."

It further appeared in evidence, that the defendant, subsequently to the appointment of the plaintiff as receiver of the

bank, to wit, on the 17th day of February, 1858, tendered to
the plaintiff a formal conveyance of his said thirty-eight and a
half shares of the capital stock of the bank, together with a
power of attorney by him executed to the plaintiff, authorizing
him to transfer said shares to the said bank upon their books,
and claimed of the receiver, that the price of the same, amount-
ing to $433.12, should be set off, under the above stipulation,
*pro tanto*, against his said note, which the receiver declined to
receive and allow; that the bank was indebted to the defendant
in other negotiations, for money overpaid to them by the de-
fendant, or had and received by the bank for his use, in the sum
of thirty-six dollars; though the balance did not appear to his
credit on the books of the bank; and it also appeared, that the
plaintiff held the bills of the bank to the amount of $667, all
purchased by him, however, subsequent to the injunction of the
bank, at a discount of fifty per cent. on the dollar; which fur-
ther sums, he claimed, extinguished his liability on the above
note to the bank, by way of set-off.

*Clarke*, for himself, as receiver, contended, that the set-offs
claimed could not be allowed, in derogation of the statute pref-
erence of bill-holders over the other creditors of the bank; and
that as a bill-holder, the defendant having purchased the bills
of the bank held by him after the bank was enjoined, could
not be allowed to set them off against the claim of the bank
against him.

*R. W. Greene*, for the defendant, insisted upon the stipula-
tion of the bank to purchase the stock of the defendant, and the
subsequent tender of the stock by the defendant to the receiver,
in performance of the contract, as tantamount to an accord
and satisfaction of the note, *pro tanto;* to wit, to the amount of
the contract price, $433.12; and cited 2 Greenl. Ev. § 31, p. 31.
The other sums of thirty-six dollars, due from the bank to the
defendant, for money overpaid, and of $667, due to him as a
bill-holder of the bank to that amount, and claimed in set-off,
he submitted to the judgment of the court.

AMES, C. J. The liability of the defendant upon the note
sued being admitted, the only questions before us are, as to the
sums which he claims should be allowed to him against the

amount of the note, by way of accord and satisfaction and set-off.

The first of these, is, as to the sum of $433.12; being the contract price at which the bank, by their memorandum of September 22, 1857, agreed to take the defendant's thirty-eight and a half shares in the capital stock of the bank; and which is claimed, by virtue of the subsequent tender of the stock to the receiver at that price, although the stock was refused by him, to be an accord and satisfaction of this note, *pro tanto.* We do not go into the question, whether such a contract between the bank and one of its directors would be valid, when the bank was known to all concerned in its management to be insolvent, especially if, as suggested by the receiver, such a mode of retreat was, in fraud of the bill-holders, provided for all the directors and principal stockholders of the bank; a sufficient ground for such an inquiry not having been laid in the evidence submitted to us. But is such a contract, followed by a tender of the stock to the receiver, subsequent to the putting of the bank into his hands to be wound up, though the tender be refused by him, an accord and satisfaction of the note, *pro tanto* the contract value of the stock, as contended by the counsel for the defendant?

In the first place, this agreement does not profess to relate to this particular note; but is a general contract, either to buy the stock of the defendant at a stipulated price, for cash, or to give him credit for it, at that price, upon any indebtment of his to the bank, at the option, of course, of the latter; the time of transfer, indeed, to be at his option. But without insisting upon this, we are at a loss to see how, even if the agreement had pointed specially to this note, a tender of the stock under it, to be credited upon the note, and a refusal of such tender, could be, in any proper sense, an accord and satisfaction of the note, *pro tanto.* It might, indeed, be the subject of a claim for damages against the bank at the suit of the defendant; but this is very far from making it, in legal idea, a partial accord and satisfaction of the note held by the bank against the defendant. It lacks this essential characteristic of an accord, that it must be *executed,* in the sense of being precisely performed;

for it is old law, that a readiness to do a thing agreed to be done in accord, as to pay money or the like, or a tender and refusal, as in the case at bar, is no accord of a cause of action. 1 Com. Dig. Accord, B. 4, C.; *Gabriel* v. *Dresser*, 29 Eng. L. & Eq. R. 268, Williams, J. Indeed, accord without satisfaction will not avail as a defence; and *satisfaction* supposes, that the thing stipulated to be done has not only been *actually* done by the defendant, but has been accepted in satisfaction by the plaintiff. 1 Com. Dig. Accord, C.; *Evans* v. *Powis*, 1 Exch. R. 601, 607. There are, it is true, certain cases, in which the making of an agreement is itself what is stipulated for by way of accord; so that when this is accepted in satisfaction, it leaves nothing *in fieri*, nothing incomplete. But where, as in this case, it is not the agreement which is to be in satisfaction, but something to be done by the defendant under it, to wit, the transfer of stock; and especially if, as here, the plaintiff then has an option to pay cash for it or to give credit for it upon the note, it is clear that the transfer must be *accepted* as well as made in satisfaction, and not merely tendered and refused, before it can avail as an accord and satisfaction of the note. *Gifford* v. *Whittaker*, 6 Ad. & El. (N. S.) 249–252; *Evans* v. *Powis*, supra; *Flockton* v. *Hall*, 14 Ad. & El. (N. S.) 380, 386–388. It is from inattention to this distinction, perhaps, that Professor Greenleaf has been misled into saying, (2 Greenl. on Ev. § 31,) that " where the agreement is for the performance of some collateral act, and is upon sufficient consideration, ' the weight of authority' is, that ' a tender of performance is equivalent to a satisfaction.' " But however this may be, even Professor Greenleaf's view of the law would not help the defendant, since, as we have seen, the bank did not agree, upon a transfer of the stock, to give credit for the contract price of it upon this note, but reserved an option either to do this or to pay cash for the stock. This defence, of a partial accord and satisfaction of the receiver's claim, cannot, therefore, avail the defendant.

Another partial defence to this suit, is, the claim of the defendant to set off against the note sued, the amount of thirty-six dollars, due from the bank to him, as so much money received

by the bank, before it was enjoined, to his use. The bank act does not prescribe any rule of set-off, but like our act concerning the settlement of the estates of deceased insolvents, leaves that matter at large, to be determined upon general principles applicable to it. In the settlement of the estates of deceased insolvents, the analogical rule followed here in regard to set-off, is, as it is in other states, the equitable rule of the bankrupt systems of England and the United States; that is, without regard to any special connection between the claims sought to be set off, to sink the sum due to the insolvent by the amount of the sum actually due from him to his debtor, and in truth, to hold the latter to be *a debtor* to the estate, only for the balance. *Mary Ann Irons, Adm'x,* v. *Sayles Irons,* infra; *McDonald* v. *Webster,* 2 Mass. 498; *Receivers* v. *The Paterson Gas-Light Co.* 3 Zabr. (N. J.) R. 288–292. We see no reason why the same analogy in relation to set-off, should not also be followed by us in the winding up of insolvent corporations, as it seems to have been, under like circumstances, in the states of New York and New Jersey. *McLaren* v. *Pennington,* 1 Paige, 112; *Miller* v. *The Receivers of the Franklin Bank,* Ib. 444; *The Matter of the Receiver of the Middle District Bank,* Ib. 585; *Receivers* v. *The Paterson Gas-Light Co.* 3 Zabr. (N. J.) R. 283. This sum of thirty-six dollars is, therefore, allowed to the defendant in set-off.

From the same analogy, however, the sum of $667, claimed by the defendant against the bank as a bill-holder to that amount, cannot be allowed to him in set-off; the whole of the bills, so far as we can learn from the evidence, having been purchased by him, subsequent to the injunction against the bank, at a discount of fifty cents on the dollar. The injunction against the bank, like the death of the deceased insolvent, (*Mary Ann Irons, Adm'x,* v. *Sayles Irons,* infra,) must, at least, fix a period, back of which, claims against either cannot be purchased, carrying with them the equitable right of set-off against the claims for which the purchaser is liable to the estate of the insolvent bank or of the insolvent decedent, in the hands of their respective administrators. It would be in the highest degree inequitable, especially where, as here,

the party claiming the set-off was a director of the bank actively or passively participating in its mismanagement, to allow him to purchase in at a discount the bills of the bank, depreciated by his misconduct or negligence, and, by setting them off against the just claims of the bank upon him, to defeat, to the amount of the set-off, the equality in payment, as between themselves, ordained by law for the bill-holders of an insolvent bank. He cannot, therefore, be allowed to set off the bills of the bank thus purchased by him against the amount of the note here sued, but, having by payment added that amount to the other assets of the bank, he will be entitled to come upon them *pari passu* with the other bill-holders.

Judgment must be entered up against the defendant for the amount of the note sued, with the deduction of thirty-six dollars only, allowed to him by way of set-off.