Mr. Chief Justice Sharkey
delivered the opinion of the court.
This suit was brought by defendant in error, as payee of a promissory note for $4,000, made by plaintiffs in error.
*367 Two special pleas were filed; first, that on the 2d day of December, 1839, the note sued on became the property of the Bank of Port Gibson, and was afterwards assigned and transferred to the plaintiff below, contrary to law; and second, that the note was executed by defendants below, for the purpose of having it discounted in bank, and that they procured the indorsement of plaintiff for their accommodation.- That the note was discounted and became the property of the bank, and that on the 27th of October, !É>42, plaintiff took up the note by a transfer of certain shares of the capital stock, worth only $400. To these pleas issues were taken, and, on the trial, the defendants excepted to certain charges given to the jury for the plaintiff, and, also, because the court refused to give certain others asked by defendants, and a verdict was rendered for the plaintiff, for the amount of the note and interest.
The bill of exceptions discloses this state of facts. The plaintiff held a note made by the defendants for $5,488, given for a full consideration, which was made payable and negotiable in the Bank of Port Gibson. By indorsing this note, he procured it to be discounted in the bank, for his benefit. When this note matured, the makers paid a sufficient amount to reduce the sum due to $4000, and for that sum gave the note sued on as a renewal of the former note, payable as was the original, to the plaintiff, who again indorsed it, and it was discounted. The proceeds, according to the custom of the bank, were placed to the credit of the first maker, who gave a check for the amount, which was applied to the payment of the original note, which was given up. The makers failing to pay the second note, the plaintiff, as indorser, took it up, and has brought this suit on it. When the first note was discounted, plaintiff promised to give a separate guaranty for its payment, which he afterwards did, and made the payment of this and other notes indorsed by him, part in cash, and part in stock. The president of the bank was examined, who, in addition to the foregoing facts, stated, that the first note was discounted at the instance of the plaintiff, but as to the second, he was not certain whether it was or not, but a special guaranty was required of him, as a condition on *368 which the new note was taken. That the plaintiff made all the arrangements in transacting the business, and was looked to as the responsible person throughout; that it was considered as his debt.
It will be sufficient to consider of the law, as applicable to these facts, without special reference to the several charges. The plaintiff was evidently not an accommodation indorser. The contrary appears from all the proof. The renewal was but a part of the original transaction. A mere continuation of the previous liability, changed in nothing except in amount. The debt was diminished by the payment, but the character of the transaction was not changed. Union Bank of Tennessee v. Govan, (ante 333,) decided at the present term. The bank was particularly careful in not changing the liability of the parties. Their respective rights then must be determined as on a note passed in the course of trade. They stand as they would have stood, if plaintiff had taken up the original note instead of the new one.
If we are right then, in considering the case in that light, it is impossible to distinguish it from the case of Maury v. Jeffers, 4 S. & M. 87. Or if there is a distinction, it does not operate favorably to the defendants. That was a case in which the indorser, who was the payee, of a business note, had negotiated it in bank, but in consequence of the maker failing to pay, was compelled to take it up. To an action brought on it, payment was pleaded, and proof made that while the note was owned by the bank, the maker held its notes to the amount due; which notes were filed in court as an offset. We decided that this did not constitute an offset; that the agreement of the indorser was to pay the note if the maker did not, and when he did pay, on the failure of the maker, his contract of indorsement was virtually rescinded, and he was restored to his original rights. In the case of Terrey v. Woods, 6 S. & M. 139, we held that “ the indorsement to the bank was a new, distinct and independent contract. The payment (by the indorser) to the bank was not a discharge of the bill, but of the indorsement.”
This is the case with regard to all business indorsements. The indorser becomes liable on his own contract, and it is a *369 separate and distinct liability from that of the maker, who has no concern with the contract of the indorser. The indorser •undertakes upon condition, and if the condition fails, he becomes liable. The maker’s promise is absolute. He may pay the holder, but if he neglects until the indorser is called on to perform, the maker of course loses his privilege. The indorser is restored to all his rights. It is like the sale of a piece of property, which the vendor is compelled by his contract to take back. When he does so, the price by which he discharged his contract, is no criterion as between him and his vendor.
In the case of Turner v. Brown, 3 S. & M. 425, we held that it was immaterial what the assignee pays for a note. Such consideration does not regulate the liability of the maker, who is bound by a special contract to pay so much money. To the same point, see Murray & Murray v. Judah, 6 Cow. 484.
From the foregoing view, it is manifest that the law prohibiting banks from transferring their securities, can have no application in a case like the present.
The decisions of the court in giving and refusing the charges, was in strict accordance with the law of the case, and the judgment must be affirmed.