ALBERT POWELL, Respondent, v. TAYLOR BLOW AND WM. T. BLOW, ADMINISTRATORS OF JOSEPH CHARLESS, Appellants.

*Accord and Satisfaction—Payment—Partnership.*—A creditor of a partnership may, by an agreement upon a new consideration, accept the responsibility of one or more partners in lieu of the firm's liability, and thus discharge the other partners. Whether there be such an agreement, express or implied, is a question of fact to be determined upon a consideration of all the circumstances. The giving up the note of the old firm and taking a new note from the new firm, although entitled to great weight as evidence, does not raise the legal presumption of an agreement to extinguish the debt of the partnership and discharge the liability of the other parties.

*Appeal from St. Louis Circuit Court.*

*Hill & Jewett*, for appellants.

The first and third instructions given for the plaintiff, give the force of law to the notions set forth in the petition, to-wit, that surviving partners, after the death of a co-partner,

can renew the notes of the old firm and make such renewed note binding on the estate of the deceased partner.

This idea, so absurd in law, is elaborated in the petition and sustained by the court in its instructions to the jury. The third instruction given for the plaintiff distinctly tells the jury that the notes of 1859 and 1860, given after the death of Charless, may operate as a renewal or continuance of the original loan to the old firm, and thereby bind the estate of Charless. Certainly an instruction more plainly and palpably in the teeth of the law could not well be given. The transaction is as plain as daylight, and nothing but the most perverse ruling would have led even a stupid jury so far astray.

Some of the cases speak of notes being renewed after dissolution in liquidation; but this is always when the partners are living, and even that goes upon the ground of assent by all the partners. In this case there could be no implied assent to any renewal.

It is a familiar principle, that at law creditors have no right of action against a deceased partner's estate; it is only in equity that they can come upon the estate, aside from statutory provisions upon the subject. The law, upon the effect of a dissolution of partnership by death, is so familiar, that it is not deemed worth while to cite cases or text books to this court upon that point. But it is further insisted, that the two said instructions given for plaintiff were wrong in this respect, that they convey to the jury distinctly the idea that the renewal of a note cannot operate as a "payment and extinguishment" of the old note, when, in fact, the law and the custom of merchants is, that such renewal does extinguish the old note. Parsons on Notes and Bills, vol. 2, p. 203, says: "Whatever may be the law with regard to payment and satisfaction of a pre-existing debt by bill or note, the general custom and understanding of the mercantile world would seem to demand that a new note, given in renewal of an old one which is taken up, as it is termed, should pay and cancel the old note for which it is given.

" The banks consider this to be the effect of renewal, even though the old notes are left with the banks, as is frequently the case. The old note would be cancelled, if it were paid in money, though the same money would be immediately loaned to the debtor who had paid it in. There seems to be no need of going through the ceremony of paying down coin which is to be taken away again. Yet renewal amounts to this in the understanding of the parties, and we should think the courts ought to regard this universal understanding in arriving at the intention of the parties. Banks renew notes again and again. New sureties are furnished on new notes, and the debtor's own note often taken for one with sureties. The parties, without question, suppose themselves discharged. Some of the courts seem to admit that renewing a note cancels the old debt which is merged in the new note, but it cannot be regarded as by any means settled."

If there is a difference in the cases in the different States, and the law is not " settled " generally, neither is it settled in this State; and it is insisted, that when it is " settled " in this State, it should be in accordance with the " universal understanding " of the mercantile community and the decisions of many of the States, that when a note is renewed and the old one given up, that it should be at least *prima facie* proof of payment of the old note. But we insist that the law in this State is so far settled in this matter as to require that the fourth instruction asked by defendants should have been given, to the effect that the facts in this case made a *prima facie* case of payment, and called upon the plaintiff for rebutting proof. (Yarnell et al. v. Anderson, 14 Mo. 619; Patterson v. Camden, 25 Mo. 13.)

To the point that the defendants made a *prima facie* case of payment that required rebutting proof, the following cases are also cited: Arnold v. Camp, 12 John. 409; Estate of Davis v. Desauque, 5 Whart. 530; Stone v. Chamberlin, 20 Georgia, 259; Waydell v. Luer, 3 Denio, 410; Frisbee v. Larned, 21 Wend. 450.

The cases just cited are all from States where the law is

held as here, that the simply giving a note is not absolute payment. In the States of Massachusetts, Maine, New Hampshire, and Vermont, the simply giving a note is absolute payment. Indeed, this is the only sensible law on the subject, and is in accordance with the custom and the general understanding of the community.

The instructions given for the plaintiff are further wrong, on the ground that there is no evidence in the case that will authorize the jury to infer that it was not the intention of the parties to discharge the old note.

*Hamilton* and *Wickham*, for respondents.

As to the plaintiff's instructions:

The defence was, that the notes given were those of the new firm, and that this was apparent from their face. In other words: That the defendants gave their own separate security; that the first of these operated as payment and satisfaction of the old note, and that it was understood and intended by the parties that the new notes should be in full satisfaction and payment of the old note, and in discharge of the estate therefrom.

The instructions for the plaintiff, taken in connection with those given for the defendants, placed the issue before the jury in the most favorable aspect for the defendants; that is, as a question of intention. Some of the cases go so far as to call for an express agreement.

The following authorities show that satisfaction, as distinguished from payment or performance, is in such a case not the result of any mere inference or presumption of law, but of some specific understanding or agreement, the existence of which must be proved by the party who alleges it: 1 Lindley on Part. 356, 367; 2 Am. L. C. (4th ed.) 242–245; S. Bt. Charlotte v. Hammond, 9 Mo. 63, 4; Appleton v. Kennon, 19 Mo. 641; Muldrow v. Whitlock, 1 Cow. 304–6; Johnson v. Weed, 9 John. 310; Downing v. Hicks, 14 How. 240; 2 Robinson's Prac. 429; Olcott v. Rathbone, 5 Wend. 490; Vernon v. Manhattan Co. 22 Wend. 133; Cole v.

Sackett, 1 Hill, 511 ; Waydell v. Luer, 5 Hill, 448 [S. C. in error] ; 3 Denio, 410.

In Edward v. Deifendorf, 5 Barb. S. C. 408, it is said: " A promissory note of the debtor, or of one, two, or more joint debtors, for a precedent debt, is not a satisfaction of such debt, even although the creditor expressly accepts the note in satisfaction. This principle, distinctly advanced in Cole v. Sackett, (1 Hill, 516,) and in Waydell v. Luer, (5 Hill, 448,) cannot be considered as overruled by the decision of the latter case by the Court of Errors, (3 Denio, 410.)

In Van Eps v. Dillaye, 6 Barb. 252, the Court says : " The question in such cases is always whether the creditor agreed to and did accept the notes either of the debtor or of the third person, as payment of the original debt." (Dayton v. Trull, 23 Wend. 347 ; Henbach v. Mollman, 2 Duer, 259 ; Yarnell v. Anderson, 14 Mo. 624 ; Patterson v. Camden, 25 Mo. 13 ; Hays v. Stone, 7 Hill, 128 ; Hill v. Beebe, 3 Kernan, 562–3 ; Brown's Com. on Com. Law, 398 ; Perrin v. Keens, 19 Maine, 358 ; Chase v. Vaughn, 30 Maine, 413 ; Wilds v. Fessenden, 4 Met. 12 ; Jones v. Johnson, 3 W. & S. 276 ; Wallace v. Firman, 4 Watts, 378 ; Weakley v. Bell, 9 Watts, 273 ; Mason v. Wickersham, 4 W. & S. 100 ; Oliphant v. Church, 7 Harris, Pa. 320 ; Collier v. Leach, 5 Casey, Pa. 404 ; Foster v. Ludwig, 34 Maine, 461 ; Parker v. Cousins, 2 Grattan, 372.) " Partners make a note and then the partnership is dissolved. The partner who is authorized to settle up the business of the partnership cannot renew the note in the partnership name so as to bind the other partner." In such a case, though the last note does not bind the partner, who did not execute it, the first note is still a valid security as against him, though it was surrendered when the last note was taken.

The taking of a new security from one of two joint debtors will release the other if, in any case, only where there is an agreement by the creditor, express or implied, that he shall be released.

In equity :

Harris v. Farwell, 15 Beav. 33. To discharge the estate of the deceased partner it is not sufficient to take a new security, but you must agree to discharge the old firm. (Winter v. Innes, 4 My. & Cr. 108 ; Hammersly v. Lambert, 2 J. C. R. 508.) The rule, that the note *prima facie* extinguishes the debt, is assignable to New England, whose courts, however, admit that it is opposed to the common law, being founded on special usage, (6 Mass. 145,) and even there it is held that "if the paper accepted is not binding upon all the parties previously liable, or if the paper of a third person be received not expressly in payment, the presumption may be considered as repelled." (Fowler v. Ludwig, 34 Maine, 461 ; Perrin v. Keane, 19 Me. 358 ; 5 Cush. 170.)

If this were the note of the survivors alone, the circumstance that it included the unpaid balance of the separate loan, so far from having any technical operation by way of discharge, would, of itself, raise the presumption in the first instance, that it was designed merely as collateral security. (9 Watts, 273 ; 3 W. & S. 276 ; 4 Watts, 378 ; 7 Harris, Pa. 320 ; 5 Casey, Pa. 404 ; 3 Kernan, 562–3.)

Next it is insisted that where a note is renewed and the old one given up, it should be, at least, *prima facie* evidence of payment of the old note. The answer is that "renewal" is not a word of art ; it may mean simply an extension of credit or continuance of the original loan. This is the sense in which it was employed by the court. (Russell v. Phillips, 142, B. 900 ; Gault v. McGrath, 8 Casey, 398 ; Pomeroy v. Rice, 16 Pick. 24.)

BATES, Judge, delivered the opinion of the court.

This suit was brought to the September term, 1861, of the Circuit Court. The petition states "that on the 1st of November, 1858, plaintiff loaned to the firm of Charless, Blow & Co., then composed of Joseph Charless and the defendants, the sum of three thousand three hundred and seven dollars

and fifty cents, for twelve months, at ten per cent., and took the firm's note therefor, signed Charless, Blow & Co. That Charless died in 1859, before the note was due, and that in June, 1859, the defendants were appointed his administrators. That in November, 1859, when said note became due, the defendants, still doing business under the style of Charless, Blow & Co., renewed the note aforesaid, by giving a new note for the principal and interest, amounting to $3,638.25, with same rate of interest, and signed Charless, Blow & Co. ; and that the old note was delivered up to the defendants. That in March, 1860, plaintiff loaned to said Taylor and Wm. T. Blow, on their own account, the sum of $1170, for which they gave him their promissory note, signed Charless, Blow & Co., on demand with interest. That this note was paid except a balance of $116.89. That in November, 1860, when the large note became due, it was agreed that the same should be renewed for six months longer, and that a note for principal and interest, and including also the balance of $116.89, due on said small note, should be given therefor, making altogether the sum of $4,118.96, with interest from date at ten per cent. That such note was given, the same being filed, and the old notes given up to the defendants. Plaintiff further avers that the said notes thus given were renewals of the old note, and intended to hold the old firm composed of Joseph Charless and defendants, and that they were not taken in payment and satisfaction of the said first note, nor of the second note.

The answer of the defendants admits the old firm as composed of Joseph Charless and themselves, when the first note was given, and admits the death of Charless and their appointment as administrators, as alleged. It also admits that such notes were given and the old ones surrendered, as alleged, but denies that they were given as renewals or were so intended or agreed by the parties, and avers that they were given in payment and discharge, the one of the other, and that the plaintiff had full knowledge of the death of Charless when the first note became due, and that he took

the note of the defendants in payment of the old note against the estate of Charless and themselves.

It is in proof by Turner, the book-keeper of defendants, that plaintiff was frequently in the defendants' store, and knew of the death of Charless when the note of November, 1859, was given, and that the firm of " Charless, Blow & Co." was composed only of the defendants; that new books were opened by the defendants after the death of Charless, and an account opened with plaintiff, and the new notes credited as cash, and also entered under the head of bills payable; that nothing was said about the old firm when the new notes were given, and plaintiff was not present when the entries were made in the books, and there was no evidence that he had any knowledge about the books; that the note of $1170 was partly paid by cash and partly by goods from the store, and the balance, $116.89, put into the last note. The notice of the dissolution of the old firm by the death of Charless, and the formation of the new, as published in the " Missouri Republican," was also in evidence. There was no other evidence in the case.

The court then gave the following instructions for the plaintiff:

1. It is for the jury to determine from the evidence whether the notes of November 1, 1859, and November 1, 1860, or either of them, were given to and accepted by the plaintiff in satisfaction or extinguishment of the original note of Charless, Blow & Co.; and should they find from the evidence that neither of them was so given and accepted, but that it was the intention of the parties that they should both operate merely as a renewal or in continuance of the original loan to the old firm of Charless, Blow & Co., they will find for the plaintiff, notwithstanding the two notes were given up, and the plaintiff was aware at the time of the decease of Joseph Charless.

2. Unless the jury find from the evidence that it was intended between the plaintiff and Taylor Blow and Wm. T. Blow, that the notes of November, 1859, and 1860, or one of

them, should operate as a satisfaction or extinguishment of the original note of Charless, Blow & Co., they will find for the plaintiff.

3. If it was intended by both plaintiff and defendants that the notes of November, 1859, and November, 1860, should operate merely in a renewal or as a continuance of the original loan to the firm of Charless, Blow & Co., and not in satisfaction or as as an extinguishment of said original note, they will find for the plaintiff.

To the giving of the foregoing instructions, the defendants excepted.

The defendants then asked the following instructions, which were given:

1. If the plaintiff after he knew of the death of Joseph Charless loaned money to the surviving partners doing business as a new firm under the old style, he cannot recover such money of the estate of the deceased.

2. That if the plaintiff took the note of the new firm after he knew of the death of Charless, partly for money actually advanced to the new firm and partly for the debt due him from the old firm, and if he in so doing intended to make the whole a loan to the new firm, and to take the new notes in extinguishment and satisfaction of the original note, he cannot recover any part of it from the estate of Joseph Charless.

And the following instructions, which were refused:

3. The death of Joseph Charless was a legal dissolution of the partnership of Charless, Blow & Co., as existing before his death, and the renewal of a note due from the old firm by the surviving partners would not bind the estate of the deceased, if the creditor had knowledge of the death of such other partner, though said note was signed with the style of the old firm.

4. That the taking of the new notes as specified in the petition, and the giving up of the old notes after the dissolution of the firm by the death of Charless, and after that death was known to the plaintiff, is in law a discharge of the old firm unless shown by other testimony not to have

32—VOL. XXXIV.

been so intended, and the burden of proof is on the plaintiff to show that it was not so intended.

5. That if the plaintiff knew that Taylor and William T. Blow were doing business as a new firm under the style of Charless, Blow & Co., by taking their note for a debt, including partly money due him from the new firm after the death of Charless, the presumption of law is, that the plaintiff took it as the note of the new firm, and to entitle the plaintiff to recover he must rebut such presumption by proof to the contrary.

6. That executors of an estate, though surviving partners of the deceased upon whose estate they are executors, have no authority in law to give a note in the name of the old firm binding the estate of the deceased, unless such authority has been expressly given to them by the terms of copartnership.

7. The giving up of the note of the old firm of Charless, Blow & Co., and the taking therefor the note of Taylor and Wm. T. Blow, under whatever style, was in law a payment of the note of the old firm, unless the contrary intention is proved by testimony in the case.

8. That the taking of the note on time of the surviving partners after the dissolution by death was known to the plaintiff for the debt of the old firm, was a giving delay of payment which discharged the estate of the deceased partner.

Defendants excepted to the refusal of these instructions. A motion for a new trial was filed and overruled, and a bill of exceptions filed.

After the death of Joseph Charless the surviving partners could not bind his estate by note or bill, and the plaintiff does not seek to hold it liable upon the new note but only upon the original debt ; and the question presented is whether the liability of his estate for the original debt was discharged by the plaintiff's acceptance of the new note made by the surviving partners and his surrender of the old note. The new note was not properly a renewal of the old note, because it did not bind all the persons who were bound in

the first note. And the question whether it is such a substitute for the old note as to extinguish it is a compound one of law and fact.

The only two cases decided by this court which are thought to have any bearing upon the question, do not in in reality affect it. The case of Patterson v. Camden, 25 Mo. 13, was upon a bill drawn by one partner after the dissolution of the partnership, the original debt being barred by limitation. And in the case of Yarnell v. Anderson, the creditor who received the note of one of the partners, expressly stipulated that it should be satisfaction of the original note "when paid."

Decisions in other States, and in England, appear to have been somewhat conflicting; but the best authority now seems to be, that a creditor of a partnership may, by an agreement upon a new consideration, (and a new note is a sufficient consideration,) accept the responsibility of one or more partners in lieu of the firm's liability, and thus discharge the other partners. Whether there be such an agreement, express or implied, is a question of fact, to be determined by a jury upon a consideration of all the circumstances. (2 Parsons on Notes and Bills, 199 *et seq.*, and cases in the notes.) Where upon the execution of the new note the old note is given up, this fact is entitled to great weight with the jury, but does not raise a legal presumption of an agreement to extinguish it and discharge the liability of the other partner. Nor in the absence of an express agreement is it competent for the court to instruct the jury that any fact or facts alone and unconnected with a consideration of the intention or *animus* of the parties, will constitute an agreement. The burden of establishing the alleged agreement for the extinguishment of the old note, devolved upon the defendants who set it up.

The case was tried in the lower court in accordance with these principles, and its judgment is affirmed.

Judges Bay and Dryden concur.