GEORGE C. NIGHTINGALE, Assignee, *vs.* ZECHARIAH CHAFEE *et als.*

| | |
|---|---|
| 11 | 609 |
| 12 | 179 |
| 11 | 609 |
| 22 | 50 |
| 22 | 575 |
| 11 | 609 |
| 25 | 304 |

In Rhode Island a promissory note given for an antecedent debt does not discharge the debt unless the note is given and received as absolute payment; and the burden of proof is on the debtor to show that it was so given and received.

Nor does it make any difference that the makers of the note so given are fewer in number than the original debtors.

A firm issued paper with accommodation indorsements, and protected the indorsers by a mortgage executed by the partners. Subsequently one of the partners retired, and the remaining partners formed a new firm which issued paper in renewal of some of that issued by the old firm. This new paper was indorsed by one of the former indorsers, and a new mortgage, executed by all the members of the old firm, covering the estate previously mortgaged with other property, protected this indorser. After voluntary assignments by the new firm, the retired member of the old firm, and the last named indorser: —

*Held,* that the new paper was a mere renewal of the old, and that holders of the new paper were entitled equally with holders of the old to the fund furnished by the first mortgage.

*Held,* further, that no inference of the absolute payment of the old paper by the new could be drawn from the fact that the new mortgage was given, nor from the fact that the old paper was surrendered or cancelled on the issue of the new.

*Held,* further, that an agreement to discharge a retiring partner will not be inferred from the mere acceptance of the note of the continuing partners for the joint debt.

A voluntary assignee allowed certain bank deposits to remain in the name of the assignor, and without bringing suit for them until after the maturity of notes held by the bank on which the assignor was liable as indorser: —

*Held,* that the bank could retain the deposits in set-off against the notes, as by Gen. Stat. R. I. cap. 202, § 14, the right of set-off is determined by the state of the claims at "the time of the commencement of the action."

BILL IN EQUITY brought by a voluntary assignee against the different creditors of the assignor and other parties interested in the assigned estate asking for instructions. The facts are stated in the opinion of the court.

*James Tillinghast,* for the complainant and against the set-off claimed by the Rhode Island Hospital Trust Company.

I. The right to the deposit standing to the credit of Mrs. Sarah Adams passed to the complainant by her assignment of January 26, 1876, and this right cannot be defeated by the set-off of a claim against Mrs. Adams maturing after that date, particularly of a claim like that here upon a liability as indorser then contingent, and which might never become fixed. Waterman on Set-off, § 107; Burrill on Assignments, 555; *Greene* v. *Darling,* 5 Mason, 201, 214, 215; *Brashear* v. *West et als.* 7 Pet. 608, 616; *Beckwith* v. *Union Bank,* 4 Sandf. 604; affirmed on error, 9 N. Y. 211; *Myers* v. *Davis,* 22 N. Y. 489; *Martin* v. *Kunzmuller,* 37 N. Y. 396; and compare *Trafford* v. *Hall,* 7 R. I. 104. See also *Lockwood* v. *Beckwith,* 6 Mich. 168; *Neal* v. *Lea,* 64 N. C. 678.

II. And this should be so especially in this state, where an assignment of a chose in action is good without notice. *Noble* v. *Smith,* 6 R. I. 446; *Northam* v. *Cartwright,* 10 R. I. 19.

III. It is very doubtful if even in bankruptcy, where the set-off is not merely of mutual debts but by statute of mutual credits, this liability contingent at the time of bankruptcy could be off-set. That there is a wide difference between set-off in bankruptcy and in ordinary insolvency between living persons, see *Fort* v. *McCully,* 59 Barb. S. C. 87.

*Charles Hart,* for the Rhode Island Hospital Trust Company,

one of the respondents, in support of its claim to set off Mrs. Adams's liability as indorser against the claim of her assignee to her deposits.

I. This question is settled by the precise words of the Statute of Set-off, Gen. Stat. R. I. cap. 201, § 14.    If the defendant's claim be one which belongs to him in his own right, and upon which he might maintain a suit against the plaintiff in his own name, and which existed at the time of commencement of suit of the plaintiff, it may be set off.    And this, though the defendant may have acquired his claim after the cause of action accrued to the plaintiff.

The requisites of the statute touching the defendant's claim refer to the time of commencement of plaintiff's suit.    *Hardy* v. *Corlis*, 21 N. H. 356; *Carpenter* v. *Butterfield*, 3 Johns. Cases, 144; *Jefferson Co. Bank* v. *Chapman*, 19 Johns. Rep. 322; *Martin* v. *Williams*, 17 Johns. Rep. 330; Waterman on Set-off, §§ 46–66; *Smith & Co.* v. *Ewer & Peck*, 22 Pa. St. 116; *Toppan* v. *Hunter*, 21 N. H. 232; *Henry* v. *Butler*, 22 Conn. 140; *Robinson* v. *Safford*, 57 Me. 163.

II. It is not necessary that the claim of the defendant should be due at the time the plaintiff's claim arises or accrues.    If it is due at the time the plaintiff sues that is sufficient.    *Huling* v. *Hugg*, 1 W. & S. 418; *Maas* v. *Goodman*, 2 Hilt. 275; See *Cozzens* v. *Hodges*, 2 R. I. 3.

III. That the plaintiff's claim has been assigned in no wise affects these principles, in the absence of statute provisions to the contrary.    If the defendant have a claim against the assignor at the time of suit brought, even though acquired after the assignment, as the assignee must sue in the name of the assignor, it may be set off.

Especially is this true in the case of an assignment for the benefit of creditors.    Such an assignee is not a purchaser for value. He is in no better position than the assignor.    *Krause* v. *Beitel et al.* 3 Rawle, 199; *Stewart* v. *U. S. Insurance Co.* 9 Watts, 126; *Smith & Co.* v. *Ewer & Peck*, 22 Pa. St. 116; *Robinson* v. *Safford*, 57 Me. 163.

IV. But independently of the statutes of set-off, courts of equity will set off distinct and disconnected debts where some equity intervenes, when the set-off could not be made at law.

Waterman on Set-off, § 398 *et seq.* As where there has been mutual trust and credit. *Krause* v. *Beitel et al.* 1 Rawle, 199 ; *Utica Insurance Co.* v. *Power*, 3 Paige, 365 ; or in case of the insolvency of one of the parties. *Lindsay* v. *Jackson*, 2 Paige, 581 ; *Chance* v. *Isaacs*, 5 Paige, 592 ; *Miller* v. *Receiver Franklin Bank*, 1 Paige, 444 ; Waterman on Set-off, § 432, note ; *Brashear* v. *West*, 7 Pet. 608.

And this equitable right of set-off will be exercised where the debt of the party seeking the set-off is not due, or is contingent. *Lindsay* v. *Jackson*, 2 Paige, 581 ; *Chance* v. *Isaacs*, 5 Paige, 592 ; *Hinrichsen* v. *Reinback*, 27 Ill. 295.

No suit has ever been commenced by the assignee to recover the deposit. No demand was ever made for the same. Soon after the assignment of Sarah Adams to the complainant, the notes of Adams Brothers, indorsed by Sarah Adams, held by the Trust Company, matured, were dishonored by the maker, and the indorser was duly notified and charged. In any suit commenced by the assignee since to recover the deposit, the Trust Company would have been entitled by the express words of the statute to set off their claim against Sarah Adams. Hence the right of set-off is clear.

*Browne & Van Slyck*, for Zechariah Chafee, one of the respondents, and . also for the Commercial National Bank, Robert S. Burroughs & Co., and David Wilbur, respondents.

The question is who, if any, are entitled to priority in the distribution of the proceeds of the property in the first and second mortgages, and of that assigned by Mrs. Adams. All creditors of Adams Brothers who held notes dated after November 1, 1875, took these new notes in lieu of the old notes, and cancelled, surrendered, and delivered up the old notes to makers.

I. The prior notes should be first paid, all subsequent notes being taken with notice. It was the duty of subsequent takers to inquire, and their neglect to do so is at their risk.

II. This was an indemnity mortgage, and the guarantor, Chafee, is entitled to his full indemnity before any one else can share in the proceeds of that mortgage. *Post* v. *Tradesman's Bank*, 28 Conn. 428 ; *Kramer's Appeal*, 37 Pa. St. 71.

III. The notes dated prior to November 1, 1875, are the only notes described by or falling within the terms of the first mortgage, and, therefore, must first be paid.

*a.* They are the only notes signed by *the Adams Brothers* named in the first mortgage. Those dated after November 1, 1875, are in fact signed by a different firm, though bearing the same name. Hence they do not fall within the language of the first part of the first mortgage.

*b.* Neither are they renewals of any such notes of the old firm, and hence they do not fall within the language of the rest of the mortgage.

They are not renewals, because : —

*a.* After the dissolution of a firm neither of the partners have any right to renew the notes of the old firm. Collyer on Partnership, § 121 ; Story on Partnership, §§ 322, 323, and cases cited.

*b.* The notes dated after November 1, 1875, are by different parties, or some of them are different. Hence they are not renewals, *ex vi termini*, but notes given in lieu. *Bullen et al.* v. *McGillicuddy*, 2 Dana, 90 ; *Thatcher* v. *Dudley et ux.* 2 Root, 169 ; *Evans* v. *Drummond*, 4 Esp. 108 ; *Abel* v. *Sutton*, 3 Esp. 108 ; *New London Bank* v. *Lee*, 11 Conn. 12 ; *Post* v. *Tradesman's Bank*, 28 Conn. 428 ; *Letcher* v. *The Bank of Commonwealth*, 1 Dana, 82, 84.

*c.* Additional property of some considerable value was mortgaged by the second mortgage, as security for these new notes, and where security is bettered, the new obligation is not a renewal, but in lieu of the old. *St. John* v. *Purdy*, 1 Sandf. 9, and cases above cited.

*d.* The old notes were cancelled and given up to the maker, and hence will be held to have been extinguished, and the new ones to have been given in lieu thereof, and not as renewals. *Isler* v. *Baker*, 6 Humph. 85 ; Collyer on Partnership, § 559, and cases cited; *Harris* v. *Lindsay*, 4 Wash. C. C. 98, 271 ; Story on Partnership, § 155 ; *Hill* v. *Bostick*, 10 Yerg. 410; *Frisbie* v. *Larned*, 21 Wend. 450 ; *Bank of Commonwealth* v. *Ray*, 7 J. J. Marsh. 272 ; 2 Amer. Lead. Cases, 271.

IV. Where a certain class of creditors have lost their legal lien or security, equity will not set it up as against others equally meritorious, who have not lost their security. *Kurtz* v. *Hollingshead's Heirs*, 3 Cranch C. C. 68.

Hence all notes, dated after the dissolution of the old firm and the making of the new or second mortgage, cannot share in the proceeds of the first mortgage till those notes clearly falling within the terms of the first mortgage are paid in full, but must depend on the surplus and the proceeds of the second mortgage for their payment.

*Charles Bradley,* for the National Bank of Commerce, one of the respondents.

By the terms of the first mortgage, indorsements of notes in renewal of notes dated prior to November, 1875, are protected as ' well as those notes which bear date before November, 1875 (and which were renewals), and therefore the renewal notes, though bearing date subsequent to November, 1875, are entitled to a *pro rata* satisfaction or *pro rata* payment out of the proceeds of the first mortgage.

When a mortgage is given as security for indemnity, the lien is preserved to indemnify the mortgagee against indorsements of renewal notes. *Smith* v. *Prince,* 14 Conn. 472.

Mrs. Sarah Adams is compelled to pay in consequence of her original indorsements, and does so pay by her assignment, and her lien for indemnity by the first mortgage extends to renewal notes whether made by the same parties or not. *Pond* v. *Clarke,* 14 Conn. 334.

If Mrs. Adams had paid said renewal notes instead of assigning in order to pay them, she could have resorted to the first mortgage for indemnity ; in other words, the renewal notes are entitled to share *pro rata* with original notes in the proceeds of the first mortgage.

The taking of a new mortgage is not a release of the security of the first mortgage. *Taft* v. *Boyd,* 13 Allen, 84 ; 1 Lindley on Partnership, 464 (Eng. ed.), and cases cited.

That is to say, the indorsements by Mrs. Adams upon notes given by the new firm of Adams Brothers, in renewal of notes given by the original firm of Adams Brothers, were protected by the mortgage given by the first firm of Adams Brothers. *Boswell* v. *Goodwin,* 31 Conn. 74 ; 1 Hilliard on Mortgages, 479 ; *New Hampshire Bank* v. *Willard,* 10 N. H. 210.

The giving of an obligation in place of a prior one does not

discharge or release the security given for the first obligation. No original notes discounted by the Bank of Commerce for Adams Brothers have ever been paid, but such have been disposed of by the making of renewal notes and the substitution of such renewal notes for the notes discounted.

*Cæsar A. Updike,* for the assignor, Mrs. Sarah Adams, and for Adams Brothers, submitted their rights to the consideration of the court.

*July* 28, 1877. DURFEE, C. J. This is an assignee's bill for instructions. The case stated is this : In 1867 the three brothers, George, John, and Charles Adams, were and for some time had been in business as copartners under the firm of Adams Brothers, and on the seventh day of February, 1867, they gave a mortgage on a portion of their property to Sarah Adams, Tully D. Bowen, and Zechariah Chafee to indemnify or secure them for certain guaranties or indorsements made and to be made for the accommodation of the firm. The clause of defeasance recites the giving of two notes by the firm : to wit, one for $25,000, dated July 20, 1866, payable to the Providence Institution for Savings in one year, indorsed by Sarah Adams and Tully D. Bowen ; and the other for $20,000, dated October 22, 1866, payable to the People's Savings Bank in six months, indorsed by Sarah Adams and Zechariah Chafee, and states that it was contemplated that said Adams, Bowen, and Chafee should severally thereafter indorse and guarantee notes and other money paper for the firm, from time to time, and also notes in renewal of the notes aforesaid. It then provides that if the firm shall pay the notes and paper so indorsed or guarantied by all or either of said parties, and all moneys loaned or advanced to the firm by them or either of them, and shall hold them severally harmless from all loss or liability by reason thereof, the deed shall be void.

The firm of Adams Brothers remained unchanged until November 1, 1875, when George retired, leaving John and Charles, who continued to carry on the business under the old firm name. On the second day of November, 1875, the three brothers, members of the old firm, gave a second indemnity mortgage to Sarah Adams, which covered the property covered by the first, and also property not covered by it. The clause of defeasance in the new mortgage, after mentioning the indorsements of said Sarah,

then existing for the old firm, recites that she may continue to indorse and guaranty the notes and paper made by the new firm " either in renewal of, or in substitution for, or in addition to, the paper aforesaid now outstanding." It then states the condition of defeasance which secures or indemnifies her for her indorsements for the old firm as well as for the new.

On the 26th day of January, 1876, Adams Brothers failed, and Sarah Adams assigned all her property to the plaintiff in trust for the equal benefit of all her creditors. The notes of Adams Brothers, on which she was then held, or has since become liable as indorser or guarantor, amount to $174,500. Two of these notes, to wit, a note for $25,000, dated January 14, 1870, and a note for $20,000, dated April 13, 1875, were also indorsed or guarantied by Chafee. All the others were indorsed or guarantied by her alone, Bowen's indorsement having ceased. Seven notes so indorsed by her alone were given November 1, 1875. We understand that it is conceded that these notes are to be regarded as notes of the old firm. But five notes, indorsed or guarantied by her alone, amounting to $42.500, were given after November 2, 1875, the date of the second mortgage. They were not, however, given for any new loan to the new firm ; but they represent, so to speak, loans or advances to the old firm, for which the old firm had given its notes, indorsed or guarantied by Sarah Adams, said notes of the old firm being surrendered or cancelled, when the notes of the new firm, indorsed or guarantied by her, were given.

The assignee has sold, with the consent of creditors, the property assigned to him for $104,000, and he has agreed with Chafee and the creditors that $70,000 of this sum shall be taken as the proceeds of the first mortgage.

The assignee sets forth in his bill that questions have arisen in regard to the distribution of the fund in his hands, the creditors holding notes dated prior to November 2, 1875, claiming to be solely entitled to said sum of $70,000, and to be entitled *pro rata* in the residue ; while the other creditors claim that the notes held by them are but renewals of notes given by the old firm, and that they are therefore entitled to share in the entire fund equally with the creditors first mentioned. In view of these conflicting claims the assignee asks for instructions.

The right of the creditors to have the securities marshalled is not disputed, notwithstanding the assignment is for their equal benefit. The controversy has been argued as turning upon the question whether the new paper is to be regarded as given in payment, or only in renewal or extension, of the old ; for if it is only in renewal or extension, it is conceded that the holders of the new paper are entitled equally with the holders of the old under the first mortgage.

It is settled in this state by repeated decisions that giving a note for an antecedent debt does not absolutely pay the debt, unless it is given and received as payment, and that the burden is upon the debtor to show that it is so given and received. *Sweet & Carpenter* v. *James,* 2 R. I. 270, 293 ; *Wheeler* v. *Schroeder,* 4 R. I. 383, 389 ; *Wilbur* v. *Jernegan, ante,* p. 113. In these cases the maker of the note was also the debtor. In the case at bar the original debtors were more numerous than the makers of the new paper. Does that make any difference ?

The earlier English cases held that an agreement to accept the liability of one or more of several partners, in lieu of the whole, was invalid for want of consideration. *Lodge* v. *Dicas,* 3 B. & A. 611; *David* v. *Ellice,* 5 B. & C. 196. Later cases are more liberal, and hold that if a creditor actually agrees to take a firm, from which one partner has retired, as his debtor, in lieu of the old firm, he will be bound by his agreement ; but that in any given case, whether he has so agreed or not is a question of fact to be proved against him. *Thompson* v. *Percival,* 2 B. & Ad. 968 ; *Hart* v. *Alexander,* 2 M. & W. 484; Lindley on Partnership, 454. The law is the same in this country. It is also the law here that an agreement to discharge the retiring partner will not be inferred from the mere acceptance of the note of the continuing partners for the joint debt, but must be established by independent proof. 2 Amer. Lead. Cases, 5th edit. 273, 274, and cases cited. It follows that, in the case at bar, the holders of the new paper have the same right as the holders of the old, unless there is satisfactory proof that they agreed to take the new paper in payment of the original debt.

Such proof, it is claimed, exists in the fact that a new mortgage was given to secure the new paper, and also in the fact

that the old paper was surrendered or cancelled when the new was taken.

We do not think the mortgage affords any inference against the new paper   It was not given as security for creditors, but for an accommodation indorser.   It was given by all the members of the old firm, and it protects the old paper as well as the new ; and creditors, therefore, could not gain and might lose by taking the new paper in satisfaction of the old.   And finally the mortgage itself shows that it was supposed that the old paper might be kept along by renewal.

Can it be inferred that the new paper was taken in satisfaction of the old, because the old was surrendered or cancelled.   Professor Parsons, in his book on Notes & Bills 2d ed. vol. 2, p. 203, expresses the opinion that renewals at bank ought always to be regarded as payment, because he says the banks themselves so regard them.   He does not tell us how he knows they so regard them.   When the original loan is secured by mortgage, lien, or collaterals, we think it is not supposed that a renewal affects the security, which indicates that it is not supposed that the renewal creates a new debt.   The cases on this point are meagre, and disclose a vacillating and unsettled state of judicial opinion. In New York the more prevalent view seems to be that a satisfaction of the old notes is not inferrible from their mere surrender, without other proof.   *Olcott* v. *Rathbone*, 5 Wend. 490 ; *The Winsted Bank* v. *Webb*, 39 N. Y. 325 ; *First National Bank* v. *Morgan*, 13 N. Y. Sup. Ct. R. 346 ; but *contra*, see *Neff* v. *Clute*, 12 Barb. S. C. 466 ; *Arnold* v. *Camp*, 12 Johns. Rep. 409.   A similar view seems to prevail in California : *Welch* v. *Allington*, 23 Cal. 322 ; in Virginia : *Moses* v. *Trice*, 21 Grat. 556 ; in Mississippi : *Wade* v. *Thrasher*, 18 Miss. 358 ; and in Missouri : *Powell* v. *Charless' Adm'rs*, 34 Mo. 485, 495 ; *Lippold* v. *Held*, 58 Mo. 213 ; *Christian et al.* v. *Newberry*, 61 Mo. 446. In *Powell* v. *Charless' Adm'rs*, one partner gave his individual note to take up a partnership note, which was surrendered, and the court remarked : " This fact " — the fact of its surrender — " is entitled to great weight with the jury, but does not raise a legal presumption of an agreement to extinguish it and discharge the liability of the other partner."   In other states there is more inclination to regard the taking of a new note as proof of pay-

ment. *Anderson* v. *Henshaw*, 2 Day, 272; *Morgan et al.* v. *Their Creditors*, 1 La. 527; *Bank of the State* v. *Croft*, 3 McC. 522; and see *Evans* v. *Drummond*, 3 Esp. 89. In *The Estate of Davis & Desauque*, 5 Whart. 530, 538, the court say: "In the absence of all proof of a special contract, the giving up or retention of the original security will in general be a decisive circumstance;" but they add, that even when the original note is given up, the inference of payment may be rebutted by countervailing proof. And in point of fact there always will be some such proof; for if there were no reason why the creditor should sue the original rather than the renewal note, he would, of course, sue the renewal, the original being given up or cancelled. The fact or circumstance which leads him to sue the original is a fact or circumstance in rebuttal of the inference of payment drawn from the surrender or cancellation. In the case at bar, for instance, there are two reasons why an agreement to take the new notes in payment of the old should not be inferred: namely, first, the creditors by so doing would lose their hold upon the retiring partner; and, second, they would be giving up the security of the old mortgage, which, supposing they knew of it, it is presumable they would not desire to do. In some cases the inference of payment is aided by lapse of time, or by other dealings with the new firm. Here it is not. "Nothing," says Judge Marcy, in *Olcott* v. *Rathbone*, 5 Wend. 490, 491, "is considered as an actual payment which is not in truth such, unless there be an express agreement that something short of payment shall be taken in lieu of it." We think, in view of this state of the law and of the facts in the case at bar, that we have not proof enough to find that the holders of the new paper agreed to take it in payment of the old, and consequently we think they are still entitled to share *pro rata* with the other creditors in the proceeds of the first mortgage.

The counsel for Mr. Chafee contends that the notes first taken are entitled to be first paid. The bill does not ask instructions upon any such question. We think, however, the claim cannot be sustained. The mortgage makes no distinction, but purports to be given for the indemnity of all and each of the indorsers, upon all and each of their indorsements alike. The mortgagees might of course have stipulated for indemnity in the order of

their indorsements ; but they have not done so ; and the court cannot, against the plain letter of the contract, introduce such a stipulation by construction.

The bill also sets forth that Sarah Adams had on deposit, in the Rhode Island Hospital Trust Company, at the time of her assignment, the sum of $16,500, and that the company claims to retain it and the interest on it, in set-off or part payment of two notes, amounting in the aggregate to $30,000 given by Adams Brothers and indorsed by Sarah Adams, which the company then held. The notes were neither of them due when the assignment was made, but fell due within three months afterwards. It is claimed by some of the creditors that inasmuch as the deposit was not liable to the set-off when assigned, the assignee is still entitled to have or recover it without set-off. Upon the question thus raised the assignee asks for instructions.

We think the question is clearly settled by the statute. Gen. Stat. R. I. cap. 201, § 14. That statute provides that if any defendant has a demand on the plaintiff for any sum liquidated, &c., " which existed at the time of the commencement of the action and then belonged to the defendant in his own right, and for which he might maintain a suit in his own name, he may set off the same in any action founded upon any demand which could itself be set off." The assignee has never sued for the deposit. It is not claimed that he could now sue for it otherwise than in the name of the assignor. If he should now sue for it, there can be no doubt that by the plain language of the statute the company could set off its notes. The right of set-off under our statute is determined by the state of the claims at " the commencement of the action." Our statute differs materially in this respect from the New York statute ; for under the New York statute the assignee takes the contract assigned to him, subject to the right of set-off which the debtor had against it *at the time of the assignment.* Martin v. Kunzmuller, 37 N. Y. 396.

The assignee is a volunteer, and he shows no peculiar equity which entitles him to have the company restrained of its legal rights. We must therefore follow the law, and instruct him that the company is entitled to the set-off which it claims. There

may possibly be considerations growing out of the relation of the firm of Adams Brothers which may affect the right, but of them, if any such there are, we know nothing, and therefore can say nothing. *Decree accordingly.*