WILLIAM T. LEES, *Receiver, vs.* INDUSTRIAL
TRUST COMPANY.

DECEMBER 8, 1941.

ON REARGUMENT JANUARY 8, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This case, being at issue on its merits, was certified for determination to this court by the superior court under the provisions of general laws 1938, chapter 545, § 4, an agreed statement of facts having been filed in that court by the parties.

The case is an action of assumpsit brought by the plaintiff, as receiver of an insolvent corporation, to recover from

the defendant certain funds which he alleges are assets of said corporation.

The following material facts appear in said agreed statement. On February 13, 1933 The Carroll Worsted Mills, Inc. executed and delivered for good consideration its indorsed promissory note to the defendant in the sum of $11,500. This note, according to its terms, matured May 15 of the same year. On April 3, 1933, at 2 o'clock p. m., on the petition of a creditor of The Carroll Worsted Mills, Inc. the plaintiff was appointed by the superior court temporary receiver of that corporation. On that date said corporation had on deposit $6862.96 in a checking account in the defendant bank. Forthwith, after the plaintiff had been appointed temporary receiver as aforesaid, the defendant applied the amount of such checking account against said note, and when, before the close of banking hours on said April 3, the plaintiff asked the defendant for the balance of said checking account it informed the plaintiff that there was no balance in such account. The above application of said checking account was actually made on the books of the defendant before the close of banking hours on that day.

Thereafter, on April 18, 1933, plaintiff was appointed permanent receiver of The Carroll Worsted Mills, Inc. and, by a decree entered on that date by the superior court, May 20 was fixed as the last day for filing claims against said insolvent corporation. On April 21, 1933 the defendant filed its claim with the plaintiff based upon the amount of the note hereinbefore referred to, less a credit for such deposit formerly in The Carroll Worsted Mills, Inc. checking account, and less a small rebate of interest, leaving a balance on said claim of $4593, which claim was allowed by the plaintiff as receiver. When the said note matured it was dishonored and protested. The present action was instituted May 20, 1933.

The plaintiff, as receiver, is seeking to recover from the defendant the sum of $6862.96 with interest, said principal sum being the amount of the checking account of The Car-

roll Worsted Mills, Inc. in the defendant bank on said April 3, when the plaintiff was appointed temporary receiver of that corporation. In general, the plaintiff contends that under the facts and circumstances appearing herein the defendant had no right on said April 3, or thereafter, to apply the sum in said checking account to the payment of the hereinbefore-mentioned note of The Carroll Worsted Mills, Inc. for $11,500, maturing May 15, 1933.

The defendant, however, maintains that under the statute in this state relating to setoff it has the right to have the amount of said checking account applied against the note in question. This statute which has been in its present form for many years is now G. L. 1938, chap. 521, § 2. It reads as follows: "If any defendant shall have a demand on the plaintiff for any sum liquidated, or for one which may be ascertained by calculation, and which is founded on a judgment, or on an account, or on any contract whether express or implied, and whether with or without seal, and which existed at the time of the commencement of the action and then belonged to the defendant in his own right, and for which he might maintain a suit in his own name, he may set off the same in any action founded on any demand which could itself be set off."

In support of its position the defendant points out that at the time the present case was started the note in question of The Carroll Worsted Mills, Inc., held by said bank, had matured and, therefore, that the latter was entitled, under the provisions of said statute, to set off said note against the plaintiff's claim for the amount of the deposit in the insolvent corporation's checking account.

The above section was considered by the court in *Nightingale* v. *Chafee*, 11 R. I. 609. That was a bill in equity brought by an assignee for instructions. The assignor had indorsed certain notes of a partnership which had later failed. It also appeared that a bank had on deposit a substantial sum belonging to the assignor, which sum the bank claimed it could lawfully retain in setoff or part payment of two notes of the

partnership indorsed by the assignor. These notes were not due when the assignment was made, but fell due within three months thereafter. The assignee had never sued the bank for the deposit, but apparently merely brought the bill for instructions some considerable time after the notes had matured. In fact, it apparently was not affirmatively shown that he had made any demand on the bank for the deposit in question.

The above circumstances appearing, the court held that if the assignee should thereafter sue for the deposit, the bank could, under the plain language of the statute, set off its notes against the assignee's claim. The court also held that the right of setoff under our statute is determined by the state of the claims at the commencement of the action, and instructed the assignee that the bank was entitled to the setoff which it claimed. The court in conclusion, however, pointed out that there might be considerations growing out of the relations between interested parties which might affect the right of setoff, but that no such considerations had been brought to the court's attention.

Later a case was before the court where it was held that material considerations, existing before the commencement of the suit, affected the right of setoff under the statute. *Ellis* v. *First National Bank of Woonsocket*, 22 R. I. 565, was an action of assumpsit brought by assignees to recover a certain bank deposit standing in the assignor's name in the defendant bank. The latter held certain notes of the assignor which it had attempted to set off against the plaintiffs' claim. The court held that two of the notes, having already matured when the assignment for the benefit of creditors was made, could properly be set off by the bank, but that the third note, which had not then matured, could not be so set off; and the plaintiffs were allowed to recover from the defendant bank an amount equal to the face of said third note with interest.

Even though the action was brought after said last-mentioned note had matured, the bank, by reason of certain

facts appearing in the case, was not permitted to take advantage of the setoff statute. It was shown that the cashier of the defendant bank was also the treasurer of the corporation making the assignment and indorser on its said notes. Certain manipulations by the bank in connection with the assignor's deposit, including the issuing of a new passbook to the plaintiffs as assignees, took place after the assignment. In view of the equivocal position of the cashier and of his conflicting interests, the court held that his conduct should not be allowed to prejudice the assignees' rights. At page 575 of its opinion the court uses the following language: "The action of the cashier in leading them (the assignees) to believe, until after the maturity of the third note, that said deposit had been transferred to their names, prevented their suing the bank for it when it had no lien upon the deposit for the amount of that note, whereby the assignees, or the creditors of the estate they represented, suffered loss. . . . If the directors themselves, on February 10, 1899, (the date of the assignment) had refused to transfer the deposit so far as the unmatured note was concerned, the bank could have been compelled to pay said deposit, *pro tanto,* by a suit brought against it in the name of the American Worsted Company . . . ." The term "lien" is obviously used above, as it is frequently used in cases in other states, as meaning a general equitable right of setoff.

After a careful consideration of the facts now before us, we are of the opinion that, although they may not present as extreme a situation as those in the *Ellis* case, nevertheless they more nearly resemble the facts of that case than they do the facts of the *Nightingale* case. In the case at bar it appeals that a short time after his appointment as temporary receiver the plaintiff asked the defendant for the balance of the checking account of The Carroll Worsted Mills, Inc. and was informed by it that there was no balance in the said account. At that time the note had not matured. Nor had the bank, for its own protection, included in said

note any terms which accelerated its maturity in the event of the insolvency or receivership of the maker. It is clear that the defendant, which had applied the account to such note entirely on its own responsibility, without seeking or waiting for an adjudication by any court of the rights of the various parties in interest, could not and, in fact, was not then relying upon any right of setoff under the statute, but rather upon an asserted general equitable right of setoff based upon the mere appointment of a temporary receiver.

Further, it does not appear that when the plaintiff asked the bank for the balance in said account the latter revealed to the plaintiff fully all pertinent facts relating to the bank's action and exact position in connection with such account. In our judgment, it is reasonably to be inferred that the plaintiff, who was then only temporary receiver, had his attention diverted at that time from taking immediate action in respect to said account. In the meantime the date of the maturity of the note was drawing near. Apparently on April 21, 1933 the bank's action in regard to the account was made known to the plaintiff for the first time when the former's claim against the corporation was filed.

Thereafter, it is fair to assume that the plaintiff, who only three days before had been appointed permanent receiver, had to investigate the situation and had to obtain from the superior court authority to sue the defendant. We find that the plaintiff brought the instant case within a reasonable time after all the facts concerning the bank's action in the premises had come to his attention. The bank's statement to the plaintiff on April 3, 1933, when he demanded of it the amount of the balance in the account of The Carroll Worsted Mills, Inc., was in effect a refusal to do what this court in the *Ellis* case clearly indicated, as hereinafter set out, would have been the duty of the bank under the circumstances. Such statement to the plaintiff tended to mislead him as to the then existence of any corporate account to which he would be entitled, and for which he could sue

as receiver; and tended to delay the commencement of the instant case to reduce said account to possession.

In our opinion, therefore, the bank ought not to be permitted to use that delay to its own advantage and to the detriment of other creditors and of the plaintiff, when such delay was brought about by the bank's action and statement, upon which the plaintiff could reasonably rely. Therefore, under the peculiar facts and circumstances appearing herein, we are of the opinion that the defendant is not entitled, by way of defense to this action, to invoke the provisions of this statute and to set off thereunder the note against the plaintiff's claim for recovery of the amount of the checking account.

The defendant also contends that, apart from the statute, it had a general equitable right to set off the note before its maturity against the checking account of the maker of said note, because of the latter's insolvency. It has been held that the status of claims against such an insolvent corporation is to be determined as of the date of the commencement of the proceedings relating to its dissolution and the appointment of a receiver. See *In re United Mutual Fire Ins. Co.*, 22 R. I. 108; *Jablouski* v. *Simons Land Co.*, 46 R. I. 277. In the instant case the note in question did not mature until May 15, 1933, and hence was clearly an immature obligation when such proceedings were started on April 3, 1933.

Such a general equitable right of setoff as the defendant is now urging is apparently recognized in a majority of the jurisdictions which have passed upon the question. However, courts of last resort in a substantial number of states take the contrary view and refuse to allow any general equitable right of setoff when the note had not matured at the time of the assignment, when receivership proceedings were brought, or, at any rate, at the time of the appointment of a receiver. See 43 A. L. R. 1330.

It is not necessary for us to discuss the relative merits of these divergent views or of the statutes or the legal prin-

ciples upon which they rest because this court in the case of *Ellis* v. *First National Bank of Woonsocket, supra,* took the view that no such general equitable right of setoff, as is claimed by the defendant bank here in connection with the unmatured note of its depositor, existed under facts and circumstances analogous to those in the case at bar. After pointing out that the defendant bank in the *Ellis* case had the right to set off, against the account sought to be recovered, two notes of the insolvent depositor which had matured prior to the assignment, the court made the following reference, at page 574 of its opinion, to the depositor's third note: "We think, however, the case was different as to the note not then due. It was the plain duty of the cashier, as it would have been of the directors of the bank, to have allowed the transfer of the deposit so far as said note not due on or before February 10th, 1899, was concerned, for the bank then had no claim for lien on the deposit for that note, and could not have pleaded that note as a set-off . . . ." See also the above-quoted language of the court from page 575 of the *Ellis* case, *supra.*

That case has been generally accepted here and elsewhere as standing for the view contended for by the plaintiff, *viz.,* that the defendant bank is not entitled, under the circumstances of this case, to a general equitable right to set off its note, unmatured at the time of the bringing of the receivership proceedings, against the maker's account in said bank. Such view apparently has not been previously questioned in any reported case in this state, and we see no reason for changing it now. Because of its long standing, we are of the opinion that any change should be by legislative rather than by judicial action.

The defendant has called to our attention several cases in which the right of setoff of unmatured claims has been considered and allowed where the estate of a deceased insolvent is involved. Those cases are clearly distinguishable from the instant case. A specific section of our statutes has long provided for the acceleration of unmatured claims

against the estate of a decedent. General laws 1938, chap. 578, § 2. Also, setoffs in bankruptcy are specifically covered by the bankruptcy act. Further, the case of *Clarke* v. *Hawkins*, 5 R. I. 219, is not helpful to the defendant, since the setoff there allowed under general equitable principles was on a matured claim. We find, therefore, that under the facts and circumstances of the instant case the defendant has no general equitable right to set off the insolvent maker's unmatured note against the account which the plaintiff, as receiver, is seeking to recover.

Finally, the defendant argues that the plaintiff, by allowing the bank's claim for $4593, has admitted the latter's right to set off the deposit; that such allowance operated as an adjudication of the claim between the parties; and that the plaintiff is estopped from recovering in this action the deposit in dispute. In our opinion, the defendant takes nothing by this argument. The amount of the defendant's claim as filed, and as allowed by the plaintiff, was, under the facts, the least amount which the corporation admittedly owed and could not dispute. The allowance was filed by the plaintiff as receiver in such a qualified form as to give notice to the defendant that he was seeking to protect all his rights as receiver. No true estoppel, in its proper sense, should operate against the plaintiff. There is no evidence that the defendant took any action to its detriment, relying on any statements or conduct of the plaintiff. In our judgment, considering the facts herein, the issue between the parties was not adjudicated by the plaintiff's qualified allowance of the defendant's claim.

Our decision is for the plaintiff in the sum of $6862.96 with legal interest thereon from April 3, 1933.

The papers in the case, with our decision certified thereon, are ordered sent back to the superior court for entry of final judgment on the decision.

---

PER CURIAM. Following the opinion in this case, the defendant, by leave of court, filed a motion for reargument.

· Upon consideration of said motion, the court finds no reason to change said opinion in which the court rendered its decision upon the case as presented by the parties.

Defendant's motion for reargument is denied.